**E-FILED**
Wednesday, 23 December, 2015  04:37:18 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| GABRIELLA CALHOUN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   15-cv-1247 |
| | ) | |
| CITY OF BLOOMINGTON AND | ) | |
| BLOOMINGTON POLICE OFFICERS | ) | |
| JUSTIN GALE, STEVEN STATZ, IVY | ) | |
| THORNTON, BRENTON VAN | ) | |
| HOVELN, JEREMY CUNNINGHAM, | ) | |
| and UKNOWNOWN CITY OF | ) | |
| BLOOMINGTON EMPLOYEE, | ) | |
| | ) | |
| Defendants. | ) | |

# <u>O R D E R  &  O P I N I O N</u>

This matter is before the Court on the Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 31). For the reasons explained below, the Motion is DENIED.

### PROCEDURAL BACKGROUND

Plaintiff Gabriella Calhoun (hereinafter Plaintiff or Calhoun) filed a Complaint against all Defendants on June 16, 2015. (Doc. 1). The case was originally assigned to Chief Judge James E. Shadid.

Defendants filed a Partial Answer (Doc. 18) and a Partial Motion to Dismiss (Doc. 19), which became moot when Plaintiff filed her First Amended Complaint on October 2, 2015. (Doc. 28). Defendants again filed an Answer (Doc. 30) and a Partial Motion to Dismiss (Doc. 31). After the motion was fully briefed, Judge Shadid

entered a text order recusing himself and reassigning the matter to this Court. Judge Shadid denied Defendants' Motion for Reconsideration of his recusal. (Doc. 35). The pending motion is now ready for a decision.

## FACTUAL BACKGROUND

As the Court assumes the truth of all well-pleaded facts at this stage of litigation, the following factual background is taken from Plaintiff's First Amended Complaint. (Doc. 18).

On June 30, 2013, Plaintiff went to a Denny's Restaurant in Bloomington, Illinois with five other people. After she and her party were seated, a number of people whom Plaintiff did not know began fighting, first outside in the parking lot and then inside of the restaurant.

Five Bloomington police officers (Defendants Justin Gale, Steven Statz, Ivy Thornton, Brenton Van Hoveln, and Jeremy Cunningham) responded to the fight. After the restaurant's manager asked Statz to remove those who were involved in the fight from the restaurant, Statz ordered Plaintiff's boyfriend to leave. Statz allowed Plaintiff and her party (including her boyfriend) to stay once her boyfriend said that they were not involved in the fight. However, shortly thereafter, Defendant Gale escorted Plaintiff's boyfriend out of the restaurant.

As Gale removed Plaintiff's boyfriend from the restaurant, Plaintiff followed them outside. At one point, she reached around Gale in an attempt to make contact with her boyfriend. She was immediately taken down by the responding officers. One grabbed her from behind, Gale and Statz pushed her, and Defendant Thornton swept her legs out from underneath her. One of the officers struck Plaintiff in the

face. Plaintiff landed face-first, and momentarily lost consciousness. Thornton kneeled on Plaintiff's back, choked her, pushed her face into the concrete. and handcuffed her. Plaintiff's tube top had slid down, and was exposing her breasts. Thornton refused Plaintiff's request that she pull up her tube top, arrested her, escorted her to Defendant Cunningham's squad car while her breasts remained exposed, and placed her in the back seat of the car.

The car was outfitted with functional audio and video surveillance equipment, and Cunningham had activated it before Plaintiff was inside of it. The audio surveillance equipment recorded Plaintiff asking about the Defendant officers' use of force. Defendants deleted, altered, or otherwise destroyed subsequent parts of the recordings prior to Plaintiff's trial.

Defendant Van Hoveln's squad car was also on the scene and had functional, operating, and activated audio and video surveillance equipment. His car was pointed toward the front of the restaurant, where the takedown occurred. Although it recorded all of the events leading up to the officers taking down Plaintiff, there is no audio or video recording of the incident. Defendants also deleted, altered, or destroyed these recordings prior to Plaintiff's trial.  Moreover, Van Hoveln falsely reported that video surveillance equipment on his car stopped recording at the precise moment of the incident because it ran out of batteries.

Plaintiff was charged with resisting arrest and aggravated battery to a police officer. The recordings from Van Hoveln and Cunningham's squad cars that had been altered, deleted, or destroyed were exculpatory in nature, and would have contradicted Defendants' fabricated police reports that alleged Plaintiff had

punched Gale in the shoulder and head, swung her fits at him, and tried to pull away from him. Defendants never made any of these recordings available to Plaintiff and Plaintiff did not view any of them, either.  Plaintiff was acquitted on January 9, 2015 after a three-day trial at which the officers testified falsely.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934–35 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal quotation marks omitted). "[A] plaintiff's claim need not be probable, only plausible." *Id.* "To meet this plausibility standard, the complaint must supply enough fact[s] to raise a reasonable expectation that discovery will reveal evidence

supporting the plaintiff's allegations." *Id.* (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted)).

### DISCUSSION

Of the ten counts in Plaintiff's First Amended Complaint, Defendants have moved to dismiss only Count VI, Plaintiff's § 1983 due process claim against the individual Defendants that is premised on *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court recognized that the prosecution has a constitutional duty in a criminal proceeding to turn over both exculpatory and impeaching evidence to a defendant. *Id.* at 87. The duty recognized in *Brady* "extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008).

*Brady* claims have three elements: first, the evidence in question must either be exculpatory or impeaching; second, the government must have suppressed the evidence; and third, the evidence must be material, that is, a plaintiff must show that she was prejudiced by the suppression. *Id.* at 566-67.

In the First Amended Complaint, Plaintiff alleges that the Defendant officers "testified falsely at trial, stood by false police reports that they knew prosecutors would rely upon, destroyed video and audio evidence containing exculpatory evidence, continued to pursue false criminal charges against Plaintiff, and withheld from both the prosecutor and the Plaintiff" all of the exculpatory evidence. (Doc. 18 at 14). She alleges that she would not have been prosecuted if the police had disclosed the exculpatory video recordings to the prosecutor. (*Id.* at 15). Defendants

5

argue that Plaintiff cannot state a *Brady* claim because they did not suppress any evidence. To the extent that they did suppress evidence, Defendants argue that that Plaintiff was not prejudiced because she was acquitted of all criminal charges.

## I.  Allegations of Suppression

Police or prosecutors suppress evidence when "(1) the prosecution failed to disclose [it] in time for the defendant to make use of it, and (2) [it] was not otherwise available to the defendant through the exercise of reasonable diligence." *Carvajal*, 542 F.3d at 567.

Defendants argue that they did not suppress any evidence because it was otherwise available to Plaintiff, as she was aware of the circumstances that led to her arrest. They rely primarily on one district court case, *Hill v. City of Chicago*, No. 13 C 4847,  2014 WL 1978407 (N.D. Ill. May 14, 2014). In *Hill*, a husband and wife who were moving from Minnesota to Georgia were stopped by police in Chicago. After searching their car and finding an unloaded and properly registered gun in the trunk, the police arrested the husband. *Id.* at *1. The husband brought a *Brady* claim against the arresting officers, and alleged that they created a false police report of the encounter and tampered with evidence that they found in his car. *Id.* at *6. The court held that no evidence was suppressed because the husband was "aware of the circumstances of the arrest and the alleged falsity of the information contained in the police report." *Id.* For the same reason, the Seventh Circuit held in a different case that a plaintiff cannot base a *Brady* claim on a police officer's false account of the plaintiff's interrogation. *Gauger v. Hendle*, 349 F.3d 354, 360 (7th

Cir. 2003), *overruled on other grounds by Wallace v. City of Chicago*, 440 F.3d 421
(7th Cir. 2006).

Here, however, Plaintiff is not simply alleging that Defendants created false
police reports detailing the facts leading to her arrest. She is also alleging that
Defendants suppressed exculpatory and impeaching evidence – namely video
evidence that would have shown she did not commit the crimes of which she was
accused and would have impeached the police officers' testimony– by destroying it
and then creating a police report that falsely explained its absence.  Plaintiffs have
proceeded with *Brady* claims with similar allegations of suppression. For example,
in *Marshall v. Buckley*, 644 F. Supp. 2d 1075 (N.D. Ill. 2009), a woman alleged that
police officers violated *Brady* by withholding photographs of her that showed certain
injuries she suffered during an incident with them. *Id.* at 1079-81. Surely she was
aware of the circumstances in which she received the injuries. *See id.* at 1081.
However, the suppressed photographic evidence had "independent significance," in
that it directly impeached the testimony of the officers in a case that turned on
conflicting testimony from her and the officers. *Id.; see also Smith v. Vill. of Dolton*,
No. 09-cv-6351, 2010 WL 744313, at *3-4 (N.D. Ill. Feb. 25, 2010)(allowing *Brady*
claim based on destruction of video-surveillance tapes of the plaintiff's arrest to
proceed).

The First Amended Complaint includes sufficient allegations that Defendants
suppressed exculpatory and impeaching evidence in violation of *Brady*.  The nature
of the evidence at stake here is analogous to the evidence at stake in *Marshall*. *See*
644 F. Supp. 2d at 1081. The withheld recordings were documentary exculpatory

evidence that would have also impeached the false testimony of the officers, they were in the control of Defendants, and Plaintiff did not have alternative documentary evidence of that nature at her disposal. *See id.* To accept Defendants argument and hold that Plaintiff cannot state a *Brady* claim because she was aware of the circumstances leading to her arrest, even when there were "various [other] methods employed by police [meant] to ensure [her] conviction" of which she did not have firsthand knowledge "would preclude any innocent criminal defendant from bringing a *Brady* claim because [she] would already know that any incriminating evidence was false." *Taylor v. City of Chicago*, 80 F. Supp. 3d 817, 827-28 (N.D. Ill. 2015).  The Court is not willing to do that.

## II. Prejudice

Defendants also argue that Plaintiff cannot maintain her *Brady* claim because she was acquitted at trial. The Seventh Circuit has routinely expressed doubt that acquitted defendants can establish the sort of prejudice needed for a *Brady* violation. *See, e.g., Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015), *reh'g denied* (Feb. 26, 2015). Yet, it has also assumed that a plaintiff can establish prejudice by showing that the police's prompt disclosure of *Brady* evidence would have altered the prosecutor's decision to proceed to trial. *See Mosley v. City of Chicago*, 614 F.3d 391, 397-98 (7th Cir. 2010); *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009). Contrary to Defendants' contention, Plaintiff's acquittal does not foreclose her *Brady* claim as a matter of law. *See Huon v. Mudge*, 597 F. App'x 868, 874 (7th Cir. 2015).

Defendants argue that even if such a claim is cognizable, Plaintiff's allegations regarding materiality are conclusory. Yet, Plaintiff has alleged that Defendants destroyed completely exculpatory and impeaching video evidence that was never seen by the prosecutor, and that she was forced to defend herself at trial against the charges for which this evidence would have exculpated her. It is plausible that disclosure of this information would have altered the prosecutor's decision to go to trial. *See Booker v. City of Chicago*, No. 11 C 732, 2011 WL 6152290, at *2 (N.D. Ill. Dec. 6, 2011). Therefore, these allegations sufficiently plead prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss (Doc. 31) is DENIED.

Entered this 23rd day of December , 2015.

                                             s. Joe B. McDade
                                    _____
                                           JOE BILLY McDADE
                                    United States Senior District Judge